UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAYS INN WORLDWIDE, INC.,** | Civ. No. 21-1035 (KM)(AME) |
| Plaintiff, | |
| v. | OPINION |
| **BAKERS 26, LLC,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Days Inns Worldwide, Inc. ("DIW") initiated this diversity action against Defendant Bakers 26, LLC ("Bakers") for breach of contract and unjust enrichment. Because Bakers has failed to answer or otherwise respond to the Complaint, the clerk entered default, and DIW now moves for a default judgment. (DE 7) For the reasons provided herein, I will grant DIW's motion.

## I. Summary[1]

### a. Factual Allegations

DIW is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. ¶1.) Bakers is a Florida LLC with its principal place of business Hollywood, Florida. (*Id.* ¶2.)

On December 10, 2014, DIW entered into a franchise agreement with JDH Hospitality Group, LLC (the "Franchise Agreement") for the operation of a

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

"DE" = Docket entry number in this case.

"Compl." = Plaintiff's Complaint (DE 1)

"Fenimore Aff." = Affidavit of Suzanne Fenimore in Support of Motion for Final Judgment by Default (DE 7-4)

1

Days Inn guest lodging facility in Bakersfield, California (the "Facility"). (*Id.* ¶9.) On July 29, 2019, Bakers acquired ownership of the Facility and requested the right to operate it as a Days Inn on a temporary basis. (*Id.* ¶10.) On the same date, DIW and Bakers entered into a Temporary Operating Agreement (the "TOA"), "under which Bakers agreed to operate the Facility under the terms and conditions of the Franchise Agreement." (*Id.* ¶11.) Bakers was required to operate the Facility as a Days Inn until April 30, 2020, pursuant to section 2 of the TOA. (*Id.* 13.) Additionally, pursuant to section 4 of the TOA, Bakers was obligated to pay "all standard fees and expenses" to DIW as set forth in the Franchise agreement "without any modification, reduction or discount." (*Id.* ¶14 (internal quotation marks omitted).)

On October 11, 2019, DIW and Bakers entered into a SynXis Subscription Agreement (the "SynXis Agreement") regarding "Bakers' access to and use of certain computer programs, applications, features and services, as well as any and all modifications, corrections, updates, and enhancements to same." (*Id.* ¶12.) Pursuant to the Franchise Agreement and the SynXis Agreement, "Bakers was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, SynXis fees and other fees" (collectively "Recurring Fees"). (*Id.* ¶15.)

Section 7.3 of the Franchise Agreement set the interest on "any past due amount" payable to DIW under the Franchise Agreement "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶16.) Section 3.6 of the Franchise Agreement required Bakers to record all transactions it conducted and gross revenue it earned "for purposes of establishing the amount of royalties and other Recurring Fees due to DIW." (*Id.* ¶17.) Additionally, the Franchise Agreement required Bakers to maintain "accurate financial information, including books, records, and accounts, relating to the

2

gross revenue of the Facility." (*Id.* ¶18.) Bakers further "agrees to allow DIW to examine and audit the entries in these books, records, and accounts." (*Id.*)

Pursuant to the TOA, "Bakers was obligated to notify DIW if it entered into an agreement to sell the Facility." (*Id.* ¶19.) And, pursuant to the Franchise Agreement, "DIW could terminate the Franchise Agreement, with notice to Bakers, if Bakers (a) discontinued operating the Facility as a Days Inn® guest lodging establishment, and/or (b) lost possession or the right to possession of the Facility." (*Id.* ¶20.) Upon suit for breach, the Franchise Agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party." (*Id.* ¶21 (internal quotation marks omitted).)

On February 13, 2020, Bakers sold the Facility to a third party, which unilaterally terminated the TOA. (*Id.* ¶ 22.) DIW acknowledged that termination, effective February 13, 2020, by letter dated March 25, 2020. (*Id.* ¶23.) Plaintiff submits that, at the time of termination, Bakers was obligated to pay "all outstanding Recurring Fees" through the date of termination. (*Id.* ¶24.) Bakers, however, failed to pay. (*Id.* ¶25.)

### b. Procedural History

On January 22, 2020, DIW filed this action. The Complaint asserts three claims:

**Count I** – Breach of contract (failure to account to DIW for gross revenue)

**Count II** – Breach of contract (failure to remit Recurring Fees)

**Count III** – Unjust enrichment (failure to remit Recurring Fees)

(*Id.* ¶¶26-37.)

Defendant has failed to answer or otherwise respond to the Complaint. On March 3, 20201, the Clerk entered default. DIW now moves for default judgment and seeks damages in the amount of $82,337.47. (Fenimore Aff. ¶¶20-21.)

## II. Discussion

### a. Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Summons and Complaint were served on Bakers on February 5, 2021. (DE 5.) Bakers failed to answer or otherwise respond to the Complaint within the deadline and the Clerk's entry of default was duly noted on the docket on March 3, 2021. Therefore, the prerequisites for default have been satisfied

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### i. Factor one: Existence of a meritorious defense

As always, evaluation of the first factor is made difficult by the defendant's failure to answer or to oppose the motion for default judgment. It is also made difficult by DIW's failure to brief its entitlement to the relief sought. (*See* DE 7 at 3 (noting that DIW declined to submit a brief under Local Civil Rule 7.1(d)(1) "because no significant legal argument is made in connection with this motion.").) Nevertheless, my independent review of the record does not suggest that DIW's claims are legally flawed.

This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 because DIW and Bakers are citizens of different states and the amount in controversy exceeds $75,000.[2] Bakers consented to

---

[2] Upon instruction from the Court, DIW filed a submission demonstrating that the amount in controversy, exclusive of prejudgment interest, exceeds $75,000.00. (DE 9 at 1.) The current amount of outstanding Recurrent Fees, exclusive of prejudgment interest, is $71,603.76. (*Id.*) DIW also seeks attorneys' fees, which it is entitled to under the Franchise Agreement, in the amount of $6,500.81. (*Id.*) Therefore, the total amount in controversy, exclusive of interest and costs, is currently $78,104.57. (*Id.*) Because the amount in controversy exceeds the jurisdictional amount before adding the prejudgment interest, I decline to decide the legal issue of whether prejudgment interest should be considered in calculating the amount in controversy. *See Luellen v. Luellen*, No. 12-496, 2013 WL 1182958, at *4 (W.D. Pa.

the personal jurisdiction of this Court under the TOA. (Compl. ¶7); *see also Actega Kelstar, Inc. v. Musselwhite*, No. 09-1255, 2009 WL 1794793, at *2 (D.N.J. June 22, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105) (noting that a forum selection clause is one way to consent to personal jurisdiction).

The Complaint asserts three counts, two for breach of contract and one for unjust enrichment. (Compl. ¶¶26-37.) On its motion for default judgment, DIW seeks damages it incurred as a result of Baker's breach of its obligation to remit Recurring Fees owed. (Fenimore Aff. ¶¶20-21.) I will therefore focus on the Count 2 breach of contract claim.

I am satisfied that the plaintiffs have set forth a legally sufficient claim of breach of contract against Bakers. To establish a breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir.2007) (internal citation omitted).

Here, the Complaint alleges specific facts showing that DIW and Bakers entered into three valid, enforceable contracts: the Franchise Agreement, the TOA, and the SynXis Agreement. (Compl. ¶¶9-21.) The Complaint alleges that Bakers breached its contractual obligations by failing to remit the Recurring Fees upon termination of the TOA in accordance with those agreements. (*Id.* ¶¶22-25.) DIW does not explicitly plead that it has fully performed its own contractual obligations. (*See generally id.*) However, I have no facts before me to the contrary, and the Complaint alleges that Bakers unilaterally terminated the TOA by selling the Facility to a third party. (*Id.* ¶22.) Finally, DIW alleges that it has been financially damaged as a result of Baker's breach (*Id.* ¶33), and

---

Mar. 21, 2013) ("Because the Court concludes that the jurisdictional amount required for diversity jurisdiction is satisfied without including the prejudgment interest in calculating the amount in controversy, the Court need not address that issue.")

that they are entitled to receive Recurring Fees in the amount of $82,337.47, inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to the Franchise Agreement) (Fenimore Aff. ¶20). That theory of damages is straightforward and uncontroversial.

In light of the above, I find the first factor supports default.

### ii. Factors two and three: Prejudice to DIW and Bakers' culpability

The second and third factors also weigh in favor of default. Bakers was properly served but failed to appear, defend, or otherwise respond to the Complaint. It is clear that DIW has been prejudiced by this dereliction because it has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

As explained *supra*, Section II.c.i., DIW has currently established that it is entitled to $82,337.47 in damages (inclusive of Recurring Fees and interest).

Pursuant to section 17.4 of the Franchise Agreement and section 7.4 of the TOA, DIW is also entitled to attorneys' fees. (Compl. ¶21.) DIW is directed to update its damages calculation and submit a proposed final judgment within 30 days.

### III. Conclusion

For the reasons set forth above, I will grant DIW's motion (DE 7) for default judgment.

An appropriate order follows.

Dated: August 23, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**